UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-23034-CIV-ALTONAGA

**EGOR RUBANOV**,

    Petitioner,
v.

**PRESIDENT DONALD J. TRUMP**,
*et al.*,

    Respondents.
_____/

## ORDER

**THIS CAUSE** came before the Court on Petitioner, Egor Rubanov's Emergency Amended Petition for Writ of Habeas Corpus ("Amended Petition") [ECF No. 5], challenging Petitioner's immigration detention at the Krome Detention Center in Miami, Florida. (*See generally id.*). Respondents[1] filed a Response [ECF No. 8], to which Petitioner filed a Reply [ECF No. 10]. Upon review of the record, the Court concludes the Amended Petition must be granted because the process leading to Petitioner's detention was defective.

### I. BACKGROUND

*Petitioner's Immigration History.* Petitioner is a Russian citizen and fitness blogger, born in Moldova. (Am. Pet. ¶ 3 (alteration added); *see also id.* ¶ 26; *id.*, Ex. D, Egor Rubanov Decl.

---

[1] Petitioner names as Respondents Donald J. Trump, in his official capacity as President of the United States; Kristi Noem, U.S. Secretary of Homeland Security; Pamela Bondi, Attorney General; Todd M. Lyons, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Zoelle Rivera, Assistant Field Office Director, Krome Processing Center; and the Krome Detention Center Warden. (*See* Am. Pet. 1). The only proper Respondent is the Assistant Field Office Director; Respondents advise this official is Charles Parra, not Zoelle Rivera. (*See* Resp. 1 n.1); *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004) (affirming that "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent").

("Rubanov Decl.") [ECF No. 5-4] 2).[2]  He alleges he fled Russia and entered the United States legally in June 2013, after being persecuted for his failure to support the United Russia political party. (*See* Am. Pet. ¶¶ 3, 27).  Petitioner applied for asylum and protection from removal shortly after entering the United States.  (*See id.* ¶ 28).

In January 2014, the Department of Homeland Security ("DHS") instituted removal proceedings against Petitioner (*see id.* ¶ 28); and an immigration judge issued an order of removal in October 2014 (*see id.* ¶ 29).  On December 20, 2016, the Board of Immigration Appeals ("BIA") upheld the immigration judge's decision and issued a final order of removal.  (*See id.*; *see also id.*, Ex. B, Executive Office for Immigration Review Case Status ("EOIR Case Status") [ECF No. 5-2] 2–3); *Rubanov v. U.S. Att'y Gen.*, 704 F. App'x 900, 902–03 (11th Cir. 2017) (denying a petition for review of the order of removal).  The DHS placed Petitioner under an Order of Supervision on June 1, 2018.  (*See* Am. Pet. ¶ 31; *see also id.*, Ex. C, Order of Supervision [ECF No. 5-3]).

In September 2023, Petitioner filed a motion to reopen his removal proceedings based on changed conditions and sought a stay of removal with the Board of Immigration Appeals.  (*See* Am. Pet. ¶ 32; EOIR Case Status 3).  The motions to reopen and for a stay of removal are pending adjudication at the BIA.  (*See* Am. Pet. ¶ 32).

In May 2025, the DHS enrolled Petitioner in its Alternatives to Detention ("ATD") Program and supplied Petitioner with an ankle monitor.  (*See id.* ¶¶ 35, 86; *see also id.*, Ex. E, ATD Enrollment Notice [ECF No. 5-5] 2).  Petitioner alleges he has complied with all DHS and Immigration and Customs Enforcement ("ICE") directives, including ATD Program requirements.  (*See* Am. Pet. ¶¶ 31, 34–36; *see also* Rubanov Decl. 3).

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

2

One of the ATD Program's requirements was that Petitioner apply for a Russian passport. (*See* Am. Pet. ¶ 37). Despite Petitioner's fear of returning to Russia, he states he applied for a passport and submitted proof to ICE. (*See id.*; *see also* Rubanov Decl. 3).

***ICE Detains Petitioner.*** On June 21, 2025, Petitioner appeared for a scheduled check-in with ICE. (*See* Am. Pet. ¶ 43). Petitioner anticipated the removal of his ankle monitor; he asserts that an ICE agent told him the monitor would be removed upon ICE's receipt of the passport documentation. (*See id.*; Rubanov Decl. 3). At the appointment, ICE agents detained Petitioner. (*See* Am. Pet. ¶ 44; Rubanov Decl. 4). The agents allegedly remained silent when Petitioner asked what was happening and ignored his requests to speak to his attorney. (*See* Am. Pet. ¶ 44; Rubanov Decl. 4).

Shortly after his detention, the agents asked Petitioner to sign unidentified paperwork in English. (*See* Am. Pet. ¶ 46; Rubanov Decl. 4).[3] Petitioner refused to sign the forms, stating in his Declaration that he did not understand them and that no one would explain their contents. (*See* Rubanov Decl. 4).

ICE transported Petitioner by bus to the Krome Detention Center ("Krome") in Miami, Florida, where he allegedly remained shackled on the bus until sunrise, despite arriving at the facility between 10:00 and 11:00 p.m. (*See id.* 4–5; Am. Pet. ¶¶ 47–51). Due to the conditions on the bus, Petitioner lost consciousness after experiencing shortness of breath, chest pressure, and heart pain. (*See id.* ¶ 52; Rubanov Decl. 5). He was taken to a local hospital and then returned to the bus by ICE agents. (*See* Am. Pet. ¶ 53; Rubanov Decl. 5).

On the day of Petitioner's detention, ICE issued a Notice of Revocation of Release ("June 21, 2025 Notice"), informing Petitioner he would be removed to Russia or Moldova. (*See* Resp.

---

[3] Petitioner does not explain whether he prepared his Declaration, which is in English, with the assistance of a translator. (*See generally id.*; Am. Pet.).

¶ 18; *see also generally id.*, Ex. K, June 21, 2025 Notice [ECF No. 8-11]).  A Deportation Officer signed the June 21, 2025 Notice.  (*See id.* 2).  Then, on July 16, 2025 — close to a month after Petitioner entered Krome, and after the filing of the Amended Petition — ICE issued a second Notice of Revocation of Release ("July 16, 2025 Notice"), signed by the Field Office Director. (*See* Resp., Ex. O, July 16, 2025 Notice [ECF No. 8-15] 2 (alteration added); *see also* Resp. ¶ 24). The July 16, 2025 Notice informed Petitioner "it has been determined that you will be kept in the custody of [ICE] at this time."  (July 16, 2025 Notice 2 (alteration added)).

According to Petitioner, "[t]o this day, ICE has never provided [him] with any clear explanation for why [he] was detained."  (Rubanov Decl. 4 (alterations added)).

***Petitioner's Medical Conditions.***  Petitioner states that he has been diagnosed with, and takes daily medication for, several medical conditions — including a heart condition causing abnormal heart rhythms, mild coronary artery disorder, acute kidney disease, benign prostatic hyperplasia, high blood pressure, lipoma, chronic shoulder pain and tendinitis, and prostatitis — and has undergone several medical procedures within the past year, including a "cardiac catheterization and cardiac electrophysiology procedure, shoulder surgeries, and prostate surgery." (Am. Pet. ¶ 40; *see also id.* ¶¶ 39, 42).  He has "requested medical attention several times every day since arriving at Krome[.]"  (*Id.* ¶ 54 (alteration added)).

On June 27, 2025, Petitioner had a medical appointment and advised a doctor of his prescribed medications.  (*See id.* ¶ 56).  The doctor informed Petitioner the medications were not available and gave Petitioner aspirin.  (*See id.* ¶¶ 56–57; *see also* Rubanov Decl. 6).  Later, the doctor prescribed two other medications but did not provide two other "essential heart and endocrine drugs" Petitioner had been taking, as Krome did not have them on hand.  (Rubanov Decl. 5–6).  Making matters worse, ICE allegedly refused to provide a diet Petitioner's medical

conditions require, instead providing "heavy and refined carbohydrates including sugary cereal, a bun, or a cookie[,]" which significantly increase [Petitioner's] risk of heart attack or stroke. (Am. Pet. ¶ 59 (alterations added)).

Other conditions at Krome allegedly compound Petitioner's medical distress. He asserts Krome is overcrowded, without sufficient facilities to sleep or sit; there are no windows and there is no proper air circulation or reliable air conditioning in the cells. (*See id.* ¶ 61; *see also* Rubanov Decl. 6). Petitioner has been provided "almost no time outside[,]" and that limited time has "occurred in the middle of the day in extreme heat." (Am. Pet. ¶ 63 (alteration added); *see also* Rubanov Decl. 5–6). As a result of these conditions and the lack of medical care, Petitioner states that his eyesight has worsened and he has developed severe back pain — which he fears may be linked to a prior kidney condition; along with a cough, sore throat, nasal congestion, headache, ear pain, and hearing loss. (*See* Am. Pet. ¶ 62; *see also* Rubanov Decl. 6–7).[4]

***Petitioner's Habeas Petitions.*** On July 7, 2025, Petitioner filed a Petition for Writ of Habeas Corpus [ECF No. 1]. (*See generally id.*). The Amended Petition followed on July 14, 2025. (*See generally id.*). In the Amended Petition, Petitioner argues that his "warrantless arrest" exceeded ICE's statutory authority and violated his procedural due process rights (*id.* ¶ 93; *see also id.* ¶¶ 82–92, 94–114); his detention violates the Immigration and Nationality Act ("INA"), 8 U.S.C. section 1231(a)(6), because there is no significant likelihood of removal in the reasonably foreseeable future (*see* Am. Pet. ¶¶ 115–36); and the conditions of confinement violate Petitioner's Fifth Amendment rights (*see id.* ¶¶ 137–49). Respondents contend the Court lacks subject matter jurisdiction over the Amended Petition; Petitioner's detention is lawful; and challenges to

---

[4] Respondents maintain that Petitioner has received adequate medical treatment since his arrival at Krome, detailing a physical examination, a blood pressure check, mental wellness services, and an examination for flu-like symptoms. (*See* Resp. ¶¶ 20; 13–14).

5

conditions of confinement are not properly asserted in a habeas action. (*See generally* Resp.).

## II. LEGAL STANDARD

District courts are authorized to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). "The typical remedy for such detention is, of course, release." *Id.* (citation omitted). "Claims challenging the fact or duration of a sentence fall within the 'core' of habeas corpus, while claims challenging the conditions of confinement fall outside of habeas corpus law." *Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) (citing *Nelson v. Campbell,* 541 U.S. 637, 644 (2004); other citations omitted).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

The Court begins with the threshold issue of jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

Petitioner proceeds under 28 U.S.C. section 2241, which confers subject matter jurisdiction over "statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Nevertheless, Respondents argue that 8 U.S.C. section 1252(g) applies, depriving the Court of jurisdiction over this case. (*See* Resp. 10). As relevant here, section 1252(g) strips courts of jurisdiction over actions "arising from" the decision or action by the Attorney General to "execute removal orders against any alien[.]" *Id.* (alteration added). Petitioner maintains section 1252(g) is inapplicable because he has not asked for a stay of removal

or challenged Respondents' authority to remove him; he only seeks release from custody. (*See* Reply 4–5). Petitioner has the better argument.

Respondents contend that Petitioner is effectively seeking release from detention to "indirectly prevent the execution of the removal order" — thereby implicating section 1252(g), which Respondents claim bars review of direct *and* indirect attacks on the legality of a removal order. (Resp. 11). In support, Respondents cite an Eleventh Circuit case affirming a district court's dismissal on jurisdictional grounds of a habeas petition seeking to stay removal. (*See id.* 10–11 (citing *Camarena v. Dir., Immigr. and Customs Enf't*, 988 F.3d 1268,1272 (11th Cir. 2021)).[5] Of course, this case is inapt. As Petitioner notes, the Amended Petition only seeks Petitioner's release from detention; it does not seek to even indirectly prevent Petitioner's removal. (*See generally* Am. Pet.). Respondents point to nothing in the record — no lack of compliance or evidence of risk of flight — that would suggest release from detention would interfere with Petitioner's removal. (*See generally* Resp.).

Respondents also invoke 8 U.S.C. section 1252(b)(9), which bars district courts from reviewing "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States[.]" *Id.* (alterations added); *see also id.* § 1252(a)(5); (Resp. 10–11). They cite *Tazu v. Attorney General United States*, 975 F.3d 292, 298–99 (3d Cir. 2020), for the proposition that "[r]e-detaining an alien for purposes of removal constitutes an enforcement mechanism of a removal order." (Resp. 11 (alteration added)).

*Tazu* does not support this broad reading. *See* 975 F.3d 292, 298–99. There, the Third Circuit held that section 1252(b)(9) stripped a district court of subject matter jurisdiction over a

---

[5] Respondents also rely on an unpublished case from another district, not binding on the Court. (*See* Resp. 11 (citing *Westley v. Harper*, No. 25-CV-00229, Ord. & Reasons [ECF No. 35], filed February 24, 2025, at 8–9 (E.D. La. 2025))); *see also Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) ("A district court is not bound by another district court's decision[.]" (alteration added)).

7

habeas petition that sought a stay of removal and challenged a "brief door-to-plane detention" undertaken to carry out removal. *Id.* at 298; *see also generally id.* The court emphasized the petitioner's re-detention challenge was "directly about removal"; and the re-detention at issue "was simply the enforcement mechanism the Attorney General picked to execute" removal. *Id.* at 298–99.

Petitioner's challenge is materially different. In this action, he does not seek to halt or invalidate his removal. (*See generally* Am. Pet.). Instead, he challenges the legality of his prolonged detention — precisely the type of claim *Tazu* recognized as falling outside section 1252(b)(9)'s scope. *See Tazu*, 975 F.3d at 299.

In fact, the Supreme Court recently rejected Respondents' interpretation of section 1252(b)(9) — one that would have limited detained noncitizens to challenging their detentions only through petitions for review of the underlying removal orders in a court of appeals. *See Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018). In the plurality opinion, Justice Alito reasoned that interpreting "arising from" in section 1252(b)(9) in such an "extreme" and "absurd" manner would lead to "staggering results" and "make claims of prolonged detention effectively unreviewable." *Id.*

Ultimately, Petitioner does not challenge "ICE's ability to detain him in order to deport him. Rather, he challenges ICE's ability to hold him in detention without adequate process for weeks and months on end." *Ceesay v. Kurzdorfer*, No. 25-cv-267, 2025 WL 1284720, at *9 (W.D.N.Y. May 2, 2025) (concluding subject matter existed (citations omitted)); *see also id.* at *10; *Grigorian v. Bondi*, No. 25-cv-22914, 2025 WL 1895479, at *3–4 (S.D. Fla. July 8, 2025). The Court has subject matter jurisdiction.

**B. Length of Detention**

Under the INA, ICE is required to remove an alien subject to a final order of removal within 90 days. *See* 8 U.S.C. § 1231(a)(1)(A). Certain categories of aliens, including those who — like Petitioner — are inadmissible under 8 U.S.C. section 1182, "may be detained beyond the removal period and, if released, shall be subject" to terms of supervision. *Id.* § 1231(a)(6). In *Zadvydas*, the Court held "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [the] statute." 533 U.S. at 699 (alteration added; citation omitted). Petitioner asserts that the length of his detention violates 8 U.S.C. section 1231, as interpreted by the Supreme Court in *Zadvydas*, 533 U.S. 678. (*See* Am. Pet. ¶¶ 115–36).

A detention period of up to six months is presumptively reasonable, and an alien may be held in custody beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. "Therefore, in order to state a claim under *Zadvydas*[,] the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (alteration added). The government must then "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Respondents contend the length of Petitioner's detention is presumptively reasonable because he has been detained for less than six months. (*See* Resp. 7). In contrast, Petitioner maintains the six-month period of presumptive reasonableness commences at the beginning of the statutory removal period and ends six months later — regardless of whether the noncitizen is detained during that time. (*See* Reply 5–6 (citing *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009); other citations omitted); *see also generally* Am. Pet.).

Even if Petitioner is correct in his interpretation, he does not meet his burden of showing there is no significant likelihood of removal in the reasonably foreseeable future. *See Akinwale*, 287 F.3d at 1052; (*see also generally* Am. Pet.). Petitioner asserts that no such likelihood exists because he does not currently possess Russian travel documents — which, once requested, can take "many months" to obtain — and because he has pending motions before the BIA to reopen his removal proceedings and to stay removal. (Am. Pet. ¶ 128; *see also id.* ¶¶ 112, 129; Reply 6–7).

Regarding the pending motions, Petitioner argues that his "removal from the United States would violate his right under 8 U.S.C. [section] 1231(b)(3)(A) to seek protection from a country he fears." (Am. Pet. ¶ 10 (alteration added)). This argument is unavailing. Petitioner raised his fear of returning to Russia before the BIA; nevertheless, the BIA issued a final order of removal. *See Rubanov*, 704 F. App'x at 902–03 (affirming the order and concluding Petitioner had not shown a well-founded fear of future persecution). Petitioner's motion to reopen does not affect the finality of that order. *See Belov v. U.S. Att'y. Gen.*, 397 F. App'x 530, 532 n.3 (11th Cir. 2010) (citation omitted). Likewise, "the filing of an administrative motion to stay does not automatically prevent removal and there is no requirement that a removal be delayed while an administrative motion to stay is pending." *Ibrahim v. Acosta*, No. 17-cv-24574, 2018 WL 582520, at *4 (S.D. Fla. Jan. 26, 2018).

Moreover, while Petitioner's lack of Russian travel documents precludes immediate removal, it does not satisfy Petitioner's initial burden under *Akinwale*. A delay of several months in the issuance of travel documents does not, without more, establish that a petitioner's removal is unlikely to occur in the reasonably foreseeable future — even if detention extends beyond the presumptively reasonable six-month period. *See Shaikh v. Meade*, No. 21-cv-23752, 2022 WL

844420, at *4 (S.D. Fla. Mar. 22, 2022) (concluding a petitioner's *Zadyvas* burden was not met in the context of an anticipated delay of several months (citation omitted)).

Although Petitioner does not identify the date of his passport application, the Court infers he submitted it less than two months ago, based on his statement that ICE contacted him to schedule the June 21, 2025 appointment "a few days after" he provided proof of the application. (Rubanov Decl. 3). Petitioner suggests he also requires a Russian visa and has not yet applied for one. (*See* Am. Pet. ¶ 128). But he supplies no reliable evidence that the Russian government would not issue a visa within a reasonably foreseeable period once an application is submitted. (*See generally id.*; Rubanov Decl.). Thus, Petitioner's challenge to the length of his detention is premature. *Contrast, e.g.*, *Khader v. Holder*, 843 F. Supp. 2d 1202, 1206–07 (N.D. Ala. 2011) (ordering release under *Zadvydas* when eight months had passed since petitioner requested travel documents from Jordan and doubt existed about whether Jordan would issue the documents).

### C. Conditions of Confinement

Next, Petitioner argues that the conditions of confinement — including the lack of access to medication and medically necessary food, the conditions at Krome, and other mistreatment by ICE — constitute unlawful punishment. (*See* Am. Pet. ¶¶ 137–49). Certainly, civil detention cannot be punitive. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *see also Zadvydas*, 533 U.S. at 690. Yet, despite the serious concerns Petitioner raises, his challenge to the conditions of his detention is not cognizable in this habeas action. *See Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990); *see also Vaz*, 634 F. App'x at 780.

Petitioner seeks to circumvent this bar by asserting that he is not seeking to compel ICE to improve the conditions of his confinement; rather, he is challenging the fact of his detention through a request for release. (*See* Am. Pet. ¶ 147). In support, he cites *Wilson v. Williams*, where

11

the Sixth Circuit held that a district court had jurisdiction to consider habeas petitions that argued unconstitutional conditions of confinement could be remedied only by release. (*See* Am. Pet. ¶ 147 (citing 961 F.3d 829, 837–38 (6th Cir. 2020))). The Eleventh Circuit has rejected this argument. *See Gomez*, 899 F.2d at 1126 (citations omitted); *see also Matos v. Lopez Vega*, 614 F. Supp. 3d 1158, 1168 (S.D. Fla. 2020).

Petitioner also argues his case is distinguishable from those in which courts have declined to address conditions of confinement in a habeas petition, because his detention is neither mandatory nor necessary. (*See* Am. Pet. ¶ 147 (citing *St. Louis v. Martin*, No. 20-cv-349, 2020 WL 3490179 (M.D. Fla. June 26, 2020))). But courts have not treated the mandatory or discretionary nature of detention as determinative of whether habeas relief is available for claims contesting conditions of confinement. *See, e.g.*, *Vaz*, 634 F. App'x at 781 (refusing habeas review of such a claim, despite the discretionary nature of petitioner's detention). In short, "habeas relief is not the appropriate vehicle" for Petitioner's challenge to the conditions of his confinement. *Daker v. McLaughlin*, No. 518-cv-00171, 2018 WL 5304115, at *2 (M.D. Ga. Oct. 25, 2018) (citation omitted).

### D. Authority for Detention

Finally, the Court turns to Petitioner's claim that Respondents violated his due process rights, and ICE exceeded its statutory authority, by detaining him without a warrant. (*See* Am. Pet. ¶¶ 82–114). When an alien is on supervised release and the 90-day removal period specified in 8 U.S.C. section 1231 has passed, ICE may detain the alien by following its own regulations, set out in 8 C.F.R. sections 241.4 and 241.13. *See Ceesay*, 2025 WL 1284720, at *16–17 (discussing section 241.4); *Kong v. United States*, 62 F.4th 608, 619–620 (1st Cir. 2023)

(discussing section 241.13).[6] And "ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)).

Under 8 C.F.R. section 241.4(l)(2), a "district director" or field office director can revoke release when he or she determines that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.*; *see also id.* § 1.2 (defining "district director" to encompass field office directors); *Ceesay*, 2025 WL 1284720, at *16 (clarifying that "Executive Associate Commissioner" means the Executive Associate Director of ICE (citations omitted)).

Compliance with 8 C.F.R. section 241.13 requires "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong*, 62 F.4th at 619–620 (citing 8 C.F.R. § 241.13(i)(2); footnote call number omitted). ICE must notify the alien of the reasons it is revoking release upon revocation, and "conduct an initial informal interview promptly after [the alien's] return to [] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3) (alterations added). The regulations do "not allow a court in the first instance to make the required individualized finding." *Kong*, 62 F.4th at 620. Further, "[t]o the extent ICE claims that it made such a determination, the court should review that claim in light of the regulations instructing ICE on how it should make such a determination." *Id.* (alteration added; citing 8 C.F.R. §§ 241.13(f), (i)(2); footnote call number omitted); *see also Liu*

---

[6] Additionally, an ICE officer is empowered to arrest any alien entering or attempting to enter the United States illegally in the officer's presence or view, and any alien whom the officer has reason to believe is here illegally and is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a). The likelihood-of-escape requirement "is always seriously applied." *United States v. Cantu*, 519 F.2d 494, 496–97 (7th Cir. 1975) (citations omitted). Respondents do not contend they detained Petitioner for any of these reasons. (*See generally* Resp.).

*v. Carter*, No. 25-3036-Civ, 2025 WL 1696526, at *2–3 (D. Kan. June 17, 2025) (reversing revocation of release when ICE failed to comply with section 241.13).

Petitioner contends the June 21, 2025 Notice and the July 16, 2025 Notice were defective, and Respondents had no other basis to detain him because they did not observe him attempting to enter or leave the United States illegally and had no reason to believe he would flee before Respondents could serve him with valid process. (*See* Reply 1–3; *see also* Am. Pet ¶¶ 125, 135). Respondents do not address the sufficiency of the documents in their Response (*see generally id.*); and the Court agrees Respondents had no legal basis to detain Petitioner, as the June 21, 2025 Notice and the July 16, 2025 Notice were defective.

As Petitioner notes, the June 21, 2025 Notice was not signed by a field office director, but by a "Deportation Officer" who lacked authority to revoke Petitioner's release. (*See* Reply 2); *see* 8 C.F.R. § 241.4(l)(2). This lack of authority renders the document defective. *See Ceesay*, 2025 WL 1284720, at *16–17 (granting habeas relief when a notice of revocation of release was not signed by an ICE field office director or another official with delegated authority (citations omitted)).

The June 21, 2025 Notice also failed to give Petitioner "meaningful notice of the basis for its revocation of his release[.]" *Perez-Escobar v. Moniz*, No. 25-cv-11781, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025) (alteration added; citation omitted); *see also* 8 C.F.R. § 241.4(l)(2)-3); *id.* § 241.13(i)(3). First, it incorrectly states that Petitioner had been ordered removed to "MOLV/RUSSIA." (June 21, 2025 Notice 2). In fact, Petitioner was ordered removed to Russia — not Moldova (*see* Resp., Ex. B, Order of Immigration Judge [ECF No. 8-2] 23) — and he is not a citizen of Moldova (*see* Rubanov Decl. 2, 7). And while the June 21, 2025 Notice advises that the revocation decision was "made based on a review of" Petitioner's file and a "determination

that there are changed circumstances in [his] case[,]" (June 21, 2025 Notice 2 (alterations added)), it does not identify any specific changed circumstances to support these statements (*see id.*; *see also* Am. Pet ¶ 125); 8 C.F.R. § 241.13; *Perez-Escobar*, 2025 WL 2084102, at *2 (finding a revocation notice deficient when it did not "identify any specific changed circumstances" and merely asserted, without support, that there was a significant likelihood of removal in the reasonably foreseeable future).

The July 16, 2025 Notice is likewise insufficient. While this second document *is* signed by the Field Office Director (*see id.* 2); *see* 8 C.F.R. § 241.4(l)(2), it was issued after Petitioner was detained for close to a month — and after the filing of the Amended Petition — and thus could not have provided reasonable notice of the reasons for revocation of release "[u]pon revocation," as required by 8 C.F.R. § 241.13(i)(3). *Id.* (alteration added); *cf. Arias Gudino v. Lowe*, No. 25-cv-00571, 2025 WL 1162488, at *12 (M.D. Pa. Apr. 21, 2025) (reasoning that a notice of revocation issued weeks after re-detention was not in compliance with 8 C.F.R. section 241.4(l)(1), which also requires notice "[u]pon revocation" (alteration added)).

Even if the July 16, 2025 Notice had been timely issued, it would not have been adequate. (*See generally id.*). Like the June 21, 2025 Notice, it does not provide specific reasons for the revocation of Petitioner's release. (*See generally* July 16, 2025 Notice). Instead, it simply states, "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case[,]" and provides boilerplate language about a "review of your file and/or your personal interview on account of changed circumstances in your case." (*Id.* 2 (alteration added)); *cf. Bonitto v. Bureau of Immigr. & Customs Enf't*, 547 F. Supp. 2d 747, 757–58 (S.D. Tex. 2008) (interpreting 8 C.F.R. section 241.4(d) — which requires ICE to "briefly set forth" reasons for a continued detention — and observing that "[c]onclusory statements that removal is 'expected in

15

the reasonabl[y] foreseeable future' . . . with no factual basis or explanation, teeters dangerously close to a perfunctory and superficial pretense instead of a meaningful review sufficient to comport with due process standards" (alterations added; quotation marks omitted)).[7]

By arresting and detaining Petitioner without following the requirements of 8 C.F.R. sections 241.13 and 241.4, Respondents violated his due process rights. *See Bonitto*, 547 F. Supp. 2d at 757 (explaining that 8 C.F.R. sections 241.13 and 241.4 "were amended to comply with the Constitutional concerns illuminated in *Zadvydas*" and thus "provide necessary procedural safeguards to ensure the detention of an alien beyond the removal period comports with due process requirements"). The proper remedy for such a violation is release. *See Munaf*, 553 U.S. at 693 (citation omitted).

## IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. The Clerk is **DIRECTED** to

   a. substitute Respondent, "Charles Parra, Assistant Field Office Director, Krome Processing Center," in place of Respondent, Zoelle Rivera, Assistant Field Office Director, Krome Processing Center;

   b. remove Respondents, Donald J. Trump, in his official capacity as President of the United States; Kristin Noem, U.S. Secretary of Homeland Security; Pamela Bondi, Attorney General, Todd M. Lyons, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; and Krome Detention Center Warden; and

---

[7] Moreover, the record does not show that the Field Office Director "ever made the threshold determination" that revocation was in the public interest, and circumstances did not reasonably permit referral of the case to the Executive Associate Director. *Rombot*, 296 F. Supp. 3d at 387 (citing 8 C.F.R. § 241.4(l)(2)); (*see generally* Resp.).

16

   c. revise the case caption to reflect those changes.

  2. Petitioner, Egor Rubanov's Emergency Amended Petition for Writ of Habeas Corpus **[ECF No. 5]** is **GRANTED**. Petitioner shall be **immediately** released from custody, subject to his previous Order of Supervision.

  **DONE AND ORDERED** in Miami, Florida, this 29th day of July, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record